In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2108

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Plaintiff-Appellee,

v.

BRIAN D. PATE and JENNIFER PATE,
Individually and on Behalf of
the Minors, DANIELLE PATE and
ANDREW PATE,

Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 97 C 753--David F. Hamilton, Judge.

ARGUED NOVEMBER 8, 2001--DECIDED December 31, 2001


  Before BAUER, RIPPLE and WILLIAMS, Circuit
Judges.

  RIPPLE, Circuit Judge.  Brian D. Pate and
Jennifer Pate, on behalf of themselves
and their minor children (collectively
"the Pates"), appeal the decision of the
United States District Court for the
Southern District of Indiana that held
that they could not recover under the
uninsured motorist provision in the
automobile insurance policy issued to
them by State Farm Mutual Automobile
Insurance Company ("State Farm"). The
Pates were injured in an accident caused
by an unidentified vehicle that left the
scene and did not strike the Pates' car.
In such circumstances, their insurance
policy limits recovery to situations in
which there is an impact between the
unidentified vehicle and their vehicle.
In granting summary judgment to State
Farm, the district court held that, under
the law of Indiana, as manifested in a
series of decisions of the Court of
Appeals of Indiana, this policy provision
was enforceable. We believe that the
district court correctly relied upon the
decisions of the state appellate court;
therefore, we affirm the judgment of the
district court.

I

BACKGROUND

The Pates, domiciliaries of Indiana, were injured in an automobile accident while traveling in Dixie County, Florida. Another vehicle, whose driver did not observe a stop sign, drove into the Pates' right of way. Mr. Pate swerved to the left to avoid the vehicle. Although he was successful in this regard, the maneuver caused him to strike another vehicle. As a result, all of the Pates suffered injuries. The vehicle that caused Mr. Pate to swerve left the scene and has never been identified.

The Pates brought an action in the United States District Court for the Northern District of Florida against William Bruton, the driver of the other vehicle in the collision and State Farm, their insurance company. Bruton later was dismissed from that action because he was uninsured. State Farm maintained that the accident was caused by the driver of the unidentified vehicle who had failed to stop at the stop sign and then left the scene. The jury, in response to specific interrogatories, concluded that the unidentified "miss-and-run" driver was in fact the cause of the accident.

State Farm then brought this action for declaratory judgment in the Southern District of Indiana. It sought a judgment that the "impact clause" in the Pates' automobile insurance policy was valid under Indiana law. The impact clause requires that the unidentified motorist must make physical contact with their car in order for the Pates to be paid under their uninsured motorist policy./1 The district court granted summary judgment to State Farm, concluding that, if the issue had been presented to the Supreme Court of Indiana, that court likely would have taken the same view as had the Court of Appeals of Indiana in a series of decisions.

II

DISCUSSION

A.

In fulfilling the mandate of Erie

Railroad v. Tompkins, 304 U.S. 64 (1938), a United States district court sitting in diversity, see 28 U.S.C. sec. 1332, must apply the law of the state as it believes the highest court of the state would apply it if the issue were presently before that tribunal. See Erie, 304 U.S. at 80; see also Wichita Royalty Co. v. City Nat'l Bank, 306 U.S. 103, 107 (1938); Lexington Ins. Co. v. Rugg & Knopp, Inc., 165 F.3d 1087, 1090 (7th Cir. 1999). When the state Supreme Court has not decided the issue, the rulings of the state intermediate appellate courts must be accorded great weight, unless there are persuasive indications that the state's highest court would decide the case differently. See Lexington, 165 F.3d at 1090; Allen v. Transamerica Ins. Co., 128 F.3d 462, 466 (7th Cir. 1997). "Where an intermediate appellate state court rests its considered judgment upon the rule of which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940).

In assessing these contentions, we therefore first must turn to the decisions of the Court of Appeals of Indiana. On three occasions, that court has upheld the validity of impact clauses. See Rice v. Meridian Ins. Co., 751 N.E.2d 685, 689-70 (Ind. Ct. App. 2001) trans. denied Nov. 14, 2001; Indiana Ins. Co. v. Allis, 628 N.E.2d 1251, 1255-56 (Ind. Ct. App. 1994) trans. denied Jul. 20, 1994; Ely v. State Farm Mut. Auto. Ins. Co., 268 N.E.2d 316, 320 (Ind. Ct. App. 1971). The Pates argue that the Indiana Supreme Court would not follow these decisions.

1.

We begin by examining the development of the Indiana case law. In Ely, the court held that the "policy requirement of 'physical contact' is not unreasonable and does not unduly restrict the [uninsured motorist] statute." Ely, 268 N.E.2d at 319. The impact clause "attempts to prevent fraudulent claims by requiring of the claimant tangible proof of collision with the vehicle of the uninsured motorist. Thus, its function is

to define the risk underwritten by the insurers in the state." Id. "It would be within the province and authority of [the Commissioner of Insurance] to reject policy provisions which require physical contact as a condition of recovery. He has not seen fit do so." Id. at 320. Therefore, concluded the court, the question was one of contract interpretation and the insurance contract, like the Pates' policy, did not provide for miss-and-run coverage. See id.

In Allis, the court followed the reasoning of Ely and expanded upon it. The court, aware of the broadening of the statute since Ely, found that the "legislature's clear and unambiguous definition of 'uninsured motorist' demonstrates that the Act's purpose is to mandate basic coverage for vehicles registered or garaged in Indiana." Allis, 628 N.E.2d at 1253 (emphasis in original). "Any additional or greater coverage is a matter of contract--which contemplates coverage in exchange for a premium." Id. The court found the definition of an uninsured motor vehicle to be clear and unambiguous, which "prevented [the court] from making an expansive interpretation of this term." Id. at 1254. Finally, the court presumed that the legislature, when revising the statute, "was aware of our court's interpretation of the original Act, and did not intend to make any changes beyond what it declared either in express terms or by unmistakable implication." Id. at 1255. "Although the legislature expanded the types of damages that would be compensated under the Act (bodily injury and property damage), and broadened coverage to include underinsured as well as uninsured motorists, it did not include 'hit and run' or 'miss and run' drivers in its definition of an uninsured motorist." Id. at 1255./2

Most recently, the court in Rice reaffirmed the holdings of Ely and Allis. See Rice, 751 N.E.2d at 689-90./3 The court found that, although "hits" was an ambiguous term and ought to be construed to include both direct and indirect contact, it was unambiguous about the need for some actual contact. See id. at 688-89. The court then emphasized that "Ind. Code sec. 27-7-5-2 [the Indiana Uninsured Motorist Act] does not require

insurance policies to cover any hit-and-run accidents, so any coverage they do provide extends beyond the requirements of the Act." Id. at 690. Finally, the court noted that "[s]even years have passed since our decision in Allis, and if the legislature wanted miss-and-run motorists to be included in the Act as a type of uninsured motorist for whom insurers must provide coverage, the legislature could have amended the Act to provide for such coverage." Id. In short, Indiana law does not require miss-and-run coverage in an automobile insurance policy. If an insurer elects to provide such coverage, it is free to limit that coverage to contractually stated conditions.

2.

We also must conclude that the Pates cannot rely on the decision of the Supreme Court of Indiana in United National Insurance Company v. DePrizio, 705 N.E.2d 455 (Ind. 1999), to suggest that the Supreme Court of Indiana would embark on a course different from the one already set by the Court of Appeals. DePrizio was a response to a certified question from the Northern District of Indiana. See DePrizio, 705 N.E. 2d at 456 n.1. The question presented was: "Is an umbrella liability policy that does not provide for uninsured/underinsured motorist coverage by its own terms an 'automobile liability policy or motor vehicle liability policy' within the meaning of Indiana Code sec. 27-7-5-2(A)?" Id. The court, interpreting the meaning of "automobile liability or motor vehicle liability polic[ies] of insurance," Ind. Code sec. 27-7-5-2(a), held that there was no limitation on the meaning of the term and that the umbrella policy fell within the statute's ambit. See id. at 461-63.

The court traced the expansion of the uninsured motorist statute, noting its increased liberalization over the years. See id. at 460-62. The Pates point to this analysis as evidence that the court would find coverage mandated in this case. We do not believe that DePrizio can be read in this manner. DePrizio simply interpreted the uninsured motorist statute to cover umbrella policies on the ground that such coverage was mandated by the language of the Indiana statute. See

id. at 463. In reaching this conclusion, the Supreme Court of Indiana noted that the "law has moved from imposing limits on such coverage to allowing full recovery." Id. at 461. By contrast, the Pates ask us to predict that the Supreme Court of Indiana would expand the statute beyond its terms.

3.

The Pates also invite our attention to the practice of other states; they point out that 30 of 44 states impose some restriction on the enforcement of impact clauses. Fourteen states enforce them in their entirety; seventeen reject them; thirteen others have a modified, independent corroboration rule which mandates coverage when a third party can verify the existence of the phantom vehicle. It is not our place to decide which of these perspectives Indiana ought to choose. Its intermediate appellate court has held three times that the plain language of the statute does not mandate the coverage of hit-and-run drivers. Although there may be persuasive policy reasons for the adoption of the Pates' position, we have no reason to believe that the Supreme Court of Indiana would take a view different from that of the Court of Appeals of Indiana./4

B.

The Pates also ask that we certify to the Supreme Court of Indiana the question of whether the exclusion of miss-and-run coverage is permitted under the uninsured motorist statute. Certification is a useful tool of cooperative federalism. It permits a federal court to seek a definitive ruling from the highest court of a state on the meaning of state law. See City of Houston v. Hill, 482 U.S. 451, 470 (1987). However, use of the procedure is not without costs to the litigants and to the state court which already must contend with a crowded docket of its own. Therefore, a respect for the burdens of our colleagues on the state bench and concern for the litigants before us counsel that we approach the decision to certify with circumspection. Consequently, federal courts consider several factors when deciding whether to certify a question to a state supreme court. "The most important consideration guiding the exercise of this discretion .

. . is whether the reviewing court finds itself genuinely uncertain about a question of state law that is vital to a correct disposition of the case." Tidler v. Eli Lilly & Co., 851 F.2d 418, 426 (D.C. Cir. 1988). "Federal courts have denied requests for certification when the status of state law on the particular point was not in sufficient doubt to justify use of the procedure." Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d, sec. 4507, at 1777. At some level there is uncertainty in every application of state law. There is always a chance that a state supreme court, if it had the same case before it, might decide the case differently. This ever-present possibility is not sufficient to warrant certification.

In applying our Circuit Rule 52,/5 we have said that "certification is appropriate when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue." In re Badger Lines, Inc., 140 F.3d 691, 698-99 (7th Cir. 1998); see also Doe v. Am. Nat'l Red Cross, 976 F.2d 372, 374-75 (7th Cir. 1992). We also consider whether the issue is of interest to the state supreme court in its development of state law, see Stephan v. Rocky Mountain Chocolate Co., 129 F.3d 414, 418 (7th Cir. 1997); see also Nagy v. Riblet Prod. Corp., 79 F.3d 572, 577 (7th Cir. 1996) ("Recognizing the nationwide application of Delaware corporate law, and the benefits of making that law more certain, we think the best way to resolve this debate is to ask the Supreme Court of Delaware."), and the interest of future litigants in the clarification of state law, see Hanlon v. Town of Milton, 186 F.3d 831, 835 (7th Cir. 1999). Certification to a state supreme court is more likely when the result of the decision will almost exclusively impact citizens of that state, see Brownsburg Area Patrons Affecting Change v. Baldwin, 137 F.3d 503, 509 (7th Cir. 1998), or when there is a conflict between intermediate courts of appeal, see Todd v. Societe BIC, 9 F.3d 1216, 1221-22 (7th Cir. 1993) (en banc); DeGrand v. Motors Ins. Co., 903 F.2d 1100, 1104 (7th Cir.

1990), or if it is an issue of first impression, see Woodbridge Place Apartments v. Washington Square Corp., 965 F.2d 1429, 1434 (7th Cir. 1992). These factors insure that federal courts will not overburden state courts with requests for certification when what is required is not the promulgation of new law but rather, the exercise of a court's judgment.

On the other hand, we have held that "[f]act specific, particularized decisions that lack broad, general significance are not suitable for certification to a state's highest court." Woodbridge, 965 F.2d at 1434. Further, if there is no room for "serious doubt" about how a state's highest court would resolve a question, certification is not appropriate. See Patz v. St. Paul Fire & Marine Ins. Co., 15 F.3d 699, 705 (7th Cir. 1994). Of course, if a question may not be dispositive to a case, then it is a weak candidate for certification. See LTV Steel Co., Inc. v. Northwest Eng'g & Constr., Inc., 41 F.3d 332, 338 (7th Cir. 1994)./6

Many cases fall between these two extremes and, with respect to them, the guideposts are necessarily less categori cal. We have noted that, even if there is no clear guidance from a state court, and a case technically meets the standards for certification, certification is neither mandated nor always necessary. See In re Makula, 172 F.3d 493, 496-97 (7th Cir. 1999) ("[T]here are a number of Illinois appellate court decisions on which we can rely to decide this case. The fact that we may need to probe below the surface of some of them in order to tease out a consistent rule is hardly reason enough on its own to burden the Illinois Supreme Court with this issue."). Notably, we have said that if there is no disagreement between the intermediate appellate courts and the issue is likely to recur frequently in state courts, giving the state supreme court "ample opportunity to revisit the subject," certification is unnecessary. Schmitt v. Am. Family Mut. Ins. Co., 161 F.3d 1115, 1117 (7th Cir. 1998).

Under these circumstances, we do not believe that certification is indicated in the present case. The law in Indiana is neither indefinite nor unclear. The

Supreme Court of Indiana has had the opportunity to address the question and has not done so./7 Although the Indiana legislature has visited the statute on several occasions, it has not attempted to amend the statute to alter the view of the Court of Appeals of Indiana. See Rice v. Meridian Ins. Co., 751 N.E.2d 685, 689-90 (Ind. Ct. App. 2001) trans. denied Nov. 14, 2001. Moreover, that court has addressed the issue on several occasions and has consistently taken the same position on this issue. We are not uncertain about the content of Indiana law on the issue. We therefore deny the motion for certification.

Conclusion

Accordingly, the judgment of the district court is affirmed. The motion for certification is denied.

AFFIRMED

MOTION FOR CERTIFICATION DENIED

FOOTNOTES

/1 Coverage U, in the State Farm policy issued to Mr. Pate reads:

We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

R.1, Ex.A.

The policy defines "uninsured motor vehicle," in pertinent part as: "a 'hit-and-run' land motor vehicle whose owner or driver remains unknown and which strikes: a. the insured or b. the vehicle the insured is occupying and causes bodily injury to the insured." Id.

/2 The court also surveyed other states' laws and found that states with uninsured motorist acts similar to Indiana's have not interpreted them to include hit-and-run vehicles within the definition of uninsured motor vehicles. Id. at 1254 n.2 (citing Hammon v. Farmer's Ins. Co., 707 P.2d 397, 399 (Idaho 1985) and Balistrieri v. Hartford Accident & Indem. Ins. Co., 540 P.2d 126, 129 (Ariz. 1975) overruled by Lowing v. Allstate Ins. Co., 859 P.2d 724 (Ariz. 1993)).

/3 The court also distinguished the line of "indi-

rect physical contact" cases, which Pate raises as evidence that the Supreme Court of Indiana might rule differently from the Court of Appeals. These cases permit an insured to recover where a hit-and-run driver makes contact with another object, which is then propelled into the insured's automobile. See Allied Fid. Ins. Co. v. Lamb, 361 N.E.2d 174, 178-79 (Ind. Ct. App. 1977). The rule applies where "(1) the possibilities of fraud appear to be slight and, (2) a causal connection between the hit-and-run automobile and the intermediate object exists." Id. at 178. These cases hinge on the ambiguity of the term "physical contact" in the insurance contracts and not on any requirement of the uninsured motorist statute. See Ackles v. Hartford Underwriters Ins. Corp., 699 N.E.2d 740, 745-46 (Ind. Ct. App. 1998).

/4 The Pates also point to an Indiana trial court decision in support of their position that the Supreme Court of Indiana would disagree with the rulings of the Court of Appeals. See Progressive N. Ins. Co. v. Davis, Cause # 84D02-9609-CP-1487 (Vigo Super. Ct. 1998). In light of the appellate court decisions, we cannot give that decision significant weight.

/5 Circuit Rule 52 reads:

   (a) When the rules of the highest court of state provide for certification to that court by a federal court of questions arising under the laws of that state which will control the outcome of a case pending in the federal court, this court, sua sponte or on motion of a party, may certify such a question to the state court in accordance with the rules of that court, and may stay the case in this court to await the state court's decision of the question certified. The certification will be made after the briefs are filed in this court. A motion for certification shall be included in the moving party's brief.

   (b) If the state court decides the certified issue, then within 21 days after the issuance of its opinion the parties must file in this court a statement of their positions about what action this court should take to complete the resolution of this appeal.

/6 Indeed, the states within the Seventh Circuit require that a certified question be determinative of the result in the pending federal case. In Indiana, the question may come from the Supreme Court of the United States, any federal court of appeals, or any federal district court "when it appears to the federal court that a proceeding presents an issue of state law which is determinative of the case and on which there

is no clear controlling Indiana precedent." Ind. R. App. Pr. 64. Illinois has a similar rule but will receive certified questions only from this court and the Supreme Court. Ill. S. Ct. Rule 20. Wisconsin will accept "questions of law of this state which may be determinative of the cause then pending" from the Supreme Court, any federal court of appeals and any state supreme court. Wis. Stat. ch. 821.01.

/7 Petitions for transfer were denied in Rice and Allis.