In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 24-1630

CLOSE ARMSTRONG, LLC, *et al.*,

*Plaintiffs-Appellants*,

*v.*

TRUNKLINE GAS COMPANY, LLC,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
Nos. 3:18-cv-00270 & 3:18-cv-00494 — **Damon R. Leichty**, *Judge*.

———————

ARGUED OCTOBER 29, 2024 — DECIDED MARCH 31, 2026

———————

Before EASTERBROOK, JACKSON-AKIWUMI, and MALDONADO,
*Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. The Trunkline Gas Company owns the 100 Line, a natural gas pipeline that runs from the Gulf of Mexico to the Michigan border. On its way to the Michigan border, the 100 Line traverses adjacent properties in Indiana owned by Close Armstrong, LLC, and Randall and Jaymie Dickson. In dispute are Trunkline's rights under written agreements Trunkline entered into with these

landowners' predecessors in interest more than sixty years ago that granted the company an easement to construct the 100 Line on the properties. To allow the land to be used for conservation purposes, the landowners sought to remove this burden on the properties. With that goal in mind, the landowners filed suit in federal district court to define the scope of the easement as limited to the area immediately surrounding the existing pipeline. Trunkline counterclaimed, asserting that it continued to hold an easement to lay additional pipelines anywhere on the properties.

The district court divided the litigation into two phases. In the first phase, the district court found that the agreements granted Trunkline an easement with an unspecified location over each property, also known as a floating or blanket easement. That decision granting Trunkline partial summary judgment is not at issue on appeal. In the second phase, the district court considered the floating easement rights Trunkline had not yet exercised, given that Trunkline had to date exercised only its right to install the 100 Line. The court concluded that the floating easement rights not yet exercised were not fixed to a location on the properties. On this basis, the court again granted Trunkline partial summary judgment.

On appeal, the landowners ask us to certify to the Indiana Supreme Court the question of whether Indiana law requires a floating easement to be fixed to a defined location. Alternatively, the landowners ask us to reverse the district court's second grant of summary judgment. We decline the landowners' request for certification because an answer from the Indiana Supreme Court is not necessary to reach this conclusion with certainty: Trunkline's remaining, unexercised floating

easement rights are not fixed under Indiana law. We therefore affirm the district court's grant of summary judgment.

**I**

The landowners are successors in interest to two parcels of land in Starke County, Indiana. Both landowners sought to grant the U.S. Department of Agriculture an easement over their land as part of the agency's Agricultural Conservation Easement Program, a competitive program that allows landowners to protect natural and aesthetic resources on their property in exchange for compensation. As part of the easement application, the USDA required a title examination, which revealed identical right-of-way agreements between the landowners' predecessors in interest and Trunkline dating back to 1959.

The 1959 agreements provided Trunkline the following rights:

> [A] right of way and easement to construct, lay, maintain, operate, alter, repair, remove, change the size of, and replace one or more pipe lines and appurtenances thereto … for the transportation of oil, gas, petroleum products or any other liquids, gases or substances which can be transported through pipe lines
>
> …
>
> [T]he right to select, change, or alter the routes of such pipe lines under, upon, over, and through lands which the undersigned owns or in which the undersigned has an interest
>
> ….

> [T]he right to lay, construct, maintain, operate, alter, repair, remove, change the size of, and replace at any time or from time to time one or more additional lines of pipe and appurtenances thereto, said additional lines not to necessarily parallel any existing line laid under the terms of this agreement.

As for the property owners, the agreements allowed them to:

> [F]ully use and enjoy said premises except for the purposes herein granted to [Trunkline] and provided [the owners] shall not construct or permit to be constructed any house, structures or obstructions on or over or that will interfere with the construction, maintenance or operation of any pipe line or appurtenances constructed hereunder and will not change the grade of such pipe line.

Pursuant to these provisions, Trunkline installed the 100 Line pipeline in 1960.

After learning of the agreements, the landowners and the USDA approached Trunkline to clarify the scope of the easement. According to the landowners, Trunkline's past statements and conduct fixed the easement to a 66-foot-wide corridor along the 100 Line. This 66-foot corridor consisted of 33 feet of space on either side of the 100 Line that Trunkline had historically cleared and maintained for routine surveillance and inspections of the pipeline. Trunkline maintained, however, that although it had exercised some of its rights by installing and maintaining the 100 Line, it continued to hold future rights to install additional non-parallel pipelines and to

relocate the 100 Line on the properties. Because of Trunkline's position, the landowners were not able to move forward with the USDA's conservation easement program.

Both landowners filed suit in federal court, seeking a declaration to locate and limit the scope of Trunkline's easement. Trunkline counterclaimed, seeking its own declaration that the burden of its easement was unlimited. The district court consolidated the cases and divided the litigation into two phases, resolving both phases with partial summary judgment in Trunkline's favor.

The first phase addressed the existence of the easement. In ruling on Trunkline's motion for summary judgment, the district court found that the 1959 agreements were unambiguous and granted Trunkline a floating easement over each property at issue. The court also found that the agreements provided Trunkline the right to lay additional pipelines not necessarily parallel to the existing 100 Line, and the right to alter the course of the 100 Line.

The second phase addressed whether the easement rights were fixed under Indiana law. Presented with cross motions for summary judgment, the court once more ruled in Trunkline's favor. The court found that, although Indiana law allowed for judicial fixation of an exercised floating easement right, it did not allow for the fixation of reserved, future, movable, and unexercised rights that had not otherwise been abandoned or extinguished. In other words, since Trunkline had not exercised its right to lay additional pipelines, the easement could not be fixed to a particular location on the land. The court also declined to fix the width of the corridor surrounding the 100 Line, leaving this as the only issue remaining for a bench trial.

The parties ultimately stipulated to the width of the corridor. In doing so, the landowners reserved the right to appeal the district court's summary judgment rulings.

On appeal, the landowners seek to reverse the court's second grant of partial summary judgment. We find no basis to reverse. But before we explain our holding, we address the landowners' request for certification to the Indiana Supreme Court.

## II

Our jurisdiction in this case rests on 28 U.S.C. § 1332, and we are satisfied that diversity among the parties is complete. As a federal court exercising diversity jurisdiction over claims arising under state law, our role is to decide the landowner's claims as we believe the state's highest court would. *Werner v. Auto-Owners Ins. Co.*, 106 F.4th 676, 681 (7th Cir. 2024); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, Indiana provides the substantive law for our examination of Trunkline's easement.

The landowners seek to certify to the Indiana Supreme Court the question of whether Indiana law requires a floating easement to be fixed to a defined location. The landowners believe their question merits certification because it determines their case, there is a dearth of state case law on floating easements, and the Indiana Supreme Court has not addressed their exact issue. Moreover, the landowners insist that their question is one of vital public concern because floating utility easements similarly burden thousands of properties across the state. Trunkline, for its part, says the landowners' request for certification is untimely and therefore barred. We assess the timeliness issue first and then the merits of certification.

The decision to certify a question of state law to a state supreme court "rests in the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). It is not enough for a party seeking certification to argue that there is a chance the state supreme court might decide the case differently. *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001). Instead, "[w]e approach the decision to certify with circumspection," mindful of the "costs to the litigants and to the state court which already must contend with a crowded docket of its own." *Id.* at 671.

We consider multiple factors to aid this decision, such as whether the "case concerns a matter of vital public concern," "the issue will likely recur in other cases," or "when there is a conflict between intermediate courts of appeal." *Id.* at 671–72 (listing factors for determining whether to certify a question). The timing of the certification request may also be relevant, especially where the litigants use substantial federal judicial resources to address state law issues and seek certification only after obtaining an unfavorable ruling. *See Nat'l Cycle, Inc. v. Savoy Reins. Co.*, 938 F.2d 61, 64 (7th Cir. 1991). But the most important consideration is whether we are "genuinely uncertain about a question of state law that is vital to a correct disposition of the case." *State Farm*, 275 F.3d at 671 (citation omitted).

As we previewed earlier, Trunkline considers the landowners' request for certification untimely. As Trunkline sees it, the landowners should have sought certification from the district court, since that was the first federal court to address the state law question. For support, Trunkline cites this court's decision in *National Cycle*.

Although we decline to certify the landowners' question,
we disagree with Trunkline's application of *National Cycle*.
That case involved an issue of attorneys' fees on which all the
state's appellate courts, save one, agreed. 938 F.2d at 63–64.
Our court had previously endorsed the approach taken by the
lone state appellate court, predicting that the state supreme
court would eventually agree. *Id.* But by the time *National Cy-
cle* was ripe for decision, the issue had become even muddier
in the courts, and the state supreme court had yet to take up
the issue. *Id.* Confronting the issue once more, we acknowl-
edged there was "no way we c[ould] eliminate the conflict
among the appellate decisions ... without certifying the ques-
tion to the Supreme Court of Illinois." *Id.* at 64.

Nonetheless, we thought certification was inappropriate
for two reasons. *Id*. The first involved the timing of the certi-
fication:

> [T]he right time to certify a question is before
> the first federal decision on the point. Certifica-
> tion eliminates the need to expend judicial re-
> sources predicting how another court will de-
> cide a question. Once we have invested the time
> and effort to make the prediction, the costs have
> been sunk.

*Id.* As for the second reason, our court heavily weighed the
impact further delay would have on the plaintiff considering
the fact that the defendant had not paid the judgment, posted
a supersedeas bond, or paid its lawyers. *Id.* ("For [the plain-
tiff], collection deferred may be collection denied. As a judg-
ment debtor in default, [the defendant] is not entitled to have
another go in still another court.").

Trunkline interprets the first part of *National Cycle*'s reasoning as a requirement that litigants must make requests for certification at the district court level or else they lose the opportunity to do so on appeal. This interpretation is incorrect. As explained above, we consider a range of factors in exercising our discretion to grant certification requests, one of which is the timing of the request for purposes of gauging the judicial resources spent. *Id.* at 63–64. Here, the district court has already expended considerable resources—reaching two rounds of summary judgment—trying to resolve a state law question. This is one reason we decline to grant the landowners' request. But this question of timing does not, by itself, foreclose the landowners' opportunity to make a certification request in the first instance on appeal. *See, e.g., Winebow, Inc. v. Capitol-Husting Co.*, 867 F.3d 862, 867, 870–71 (7th Cir. 2017), (certifying a question to the Wisconsin Supreme Court, despite the district court's prior interpretation of a state statute), *certified question answered and remanded*, 914 N.W.2d 631 (Wis. 2018); *see also* 7th Cir. R. 52(a) ("[T]his court, sua sponte or on motion of a party, may certify such a question to the state court....").

Still, no other factor provides a reason to exercise our discretion to certify. For one, this is not a case beset by conflicting state court decisions. *See Am. Safety Cas. Ins. Co. v. City of Waukegan*, 678 F.3d 475, 481 (7th Cir. 2012) ("Certification may be appropriate when decisions of intermediate state courts conflict, but as we have observed there is just one relevant decision in Illinois."). Two, while it is true that no case seems to have addressed the question of whether floating easements with unexercised, future rights can become fixed, there is sufficient case law on easement rights under Indiana law. From this case law, we conclude with certainty that Indiana law

does not require unexercised, future rights to become fixed. Recall, the certainty of our conclusion is the most important consideration in determining whether to grant a certification request. *State Farm*, 275 F.3d at 671.

Finally, while today's decision is no doubt vital to the landowners' property interests, it is difficult to conclude that this infrequently litigated issue impacts *public* concern. *See Am. Safety*, 678 F.3d at 481 ("Certification may be appropriate when an issue is recurring and important, but the fact that state courts in Illinois have not had any decisions on this subject since 1978 implies that it is not often litigated.").

We therefore decline the landowners' request for certification and turn to the merits of their claims.

## III

We review a district court's grant of summary judgment de novo. *Reid Hosp. & Health Care Servs., Inc. v. Conifer Revenue Cycle Sols., LLC*, 8 F.4th 642, 645 (7th Cir. 2021). "The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: we construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). Accordingly, because we are evaluating the district court's grant of summary judgment to Trunkline, we resolve all factual disputes in favor of the landowners.

An easement grants a person or entity "the right to use another's land for a specified purpose." *Town of Ellettsville v. DeSpirito*, 111 N.E.3d 987, 990 (Ind. 2018). Indiana recognizes two types of easements: fixed and floating. *Id.* "An easement is fixed if the instrument creating it specifies its location or if

the law requires it to be maintained in a specific position." *Id.* An easement is floating if it "is not limited to any specific part" of the land subject to the easement. *Id.* (citing *Easement*, *Black's Law Dictionary* (10th ed. 2014)). Once exercised, a floating easement may become fixed. *See, e.g.*, *Panhandle E. Pipe Line Co. v. Tishner*, 699 N.E.2d 731, 734–35, 738 (Ind. Ct. App. 1998), *holding modified on other grounds by Fraley v. Minger*, 829 N.E.2d 476 (Ind. 2005).

As the district court noted in this case, no Indiana court has ever fixed unexercised, future rights of use for the placement of a non-parallel pipeline. On appeal, the landowners offer no such case, either. Instead, they argue that the district court misinterpreted instances where Indiana courts have fixed floating pipeline easements.

We see no error. *Tishner*, like the instant case, involved an easement for the placement of the 100 Line. *Id.* at 734. The pipeline company, Panhandle, sought a permanent injunction "to prevent the Tishners from doing anything further which would threaten the integrity of the 100 [L]ine or prevent Panhandle from exercising its easement rights." *Id.* at 735. The property owners "counterclaim[ed] for damages to their improvements caused by Panhandle's work on its easement." *Id.* The Indiana Court of Appeals held that trial courts could "determine the extent of an easement of undefined width." *Id.* at 738 (citing *Rees v. Panhandle E. Pipe Line Co.*, 452 N.E.2d 405, 410 (Ind. Ct. App. 1983)). However, it expressed this point only as to the exercise of the easement to place the 100 Line, which was already in existence at the time. *Id.* at 734, 738.

The landowners assert that *Tishner* involved a future right to install a second pipeline, in addition to the 100 Line, which the state court also found could only be exercised in a specific

location. While it is possible the Tishners' right-of-way agreement contained such a provision, the state court did not identify any such provision as relevant to its opinion:

> The easement provides, *in relevant part*, that Panhandle has the right to lay, maintain, operate, repair, replace, change the size of, and remove *a pipeline*. The Tishners are entitled to fully use and enjoy the premises except for the purpose granted to Panhandle. The grant further provides that the pipe be buried so as not to interfere with the cultivation of the land, and that the easement holder must pay for damages to crops and fences caused by the exercise of easement rights. After obtaining the easement, Panhandle's predecessor placed and maintained a 22" pipeline through the property that the Tishners now own. *This line was known as the 100 [L]ine.*

699 N.E.2d at 734–35 (emphasis added). Even assuming the future right to lay a second pipeline was before the state court, nothing in the *Tishner* opinion confirms the landowners' position that the court fixed any such future, unexercised right. *See generally id.* The landowner's reliance on *Rees* is likewise inapposite, as that case involved easements to operate and maintain four *existing* natural gas pipelines. *See* 452 N.E. 2d at 407, 410.

Separately, the landowners argue Trunkline fixed its easements by practice. They point to Trunkline's conduct with respect to their own properties since 1960, namely that Trunkline has only used a 66-foot corridor around the 100 Line, has not altered the 100 Line's route, and has not installed

any additional pipelines. The landowners also cite Trunkline's communications with their predecessors in interest, in which Trunkline referenced only the existence of a 66-foot-wide easement. And they present the testimony of other property owners across Starke County who assert that Trunkline has never sought to exercise its easement rights beyond the 100 Line corridor on their land.

But in every instance where an Indiana court has relied on similar evidence to fix a floating easement based on past use, the right had already been exercised. *See DeSpirito*, 111 N.E.3d at 988, 990–91 (relating to a utility easement which appeared on a subdivision plat); *Dudgeon v. Bronson*, 64 N.E. 910, 910–11 (Ind. 1902) ("Where the right to an easement is granted without giving definite location and description to it, *the exercise of the easement in a particular course or manner*, with the consent of both parties, renders it fixed and certain." (emphasis added) (citation omitted)). In other words, although the evidence the landowners point to could be relevant to the fixation of an exercised easement, it does not apply to the easements for future, movable, unexercised rights to lay additional pipelines at issue here.

The landowners' theory of fixation by acquiescence similarly fails. Although the doctrine may apply "to settle the location of an otherwise poorly defined easement" it "does not apply where, as here, the question presented is the scope of the rights granted by an express easement." *Kwolek v. Swickard*, 944 N.E.2d 564, 577 (Ind. Ct. App.), *transfer denied*, 962 N.E.2d 644 (Ind. 2011).

Absent an indication that future, unexercised floating easements can become fixed under Indiana law, we look to well-established Indiana law favoring the freedom of

contracting. "Indiana courts recognize the freedom of parties to enter into contracts and, indeed, presume that contracts represent the freely bargained agreement of the parties." *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012) (quoting *Fresh Cut Inc. v. Fazli*, 650 N.E.2d 1126, 1129 (Ind. 1995)). As recently as 2018, the Indiana Supreme Court in *DeSpirito* recognized that its common-law approach "concerning the relocation of easements ... settles the expectations of property owners and honors their bargained-for holdings, ensuring stability in land ownership and property valuation." 111 N.E.3d at 994.

Here, the parties bargained for easements based on the future right to lay additional pipelines and alter their course. Indiana law recognizes these types of floating easements, including for the placement of utilities and gas pipelines. The landowners do not dispute this. Their only theory of relief—fixing future, unexercised rights under an easement—does not exist under Indiana law.

**IV**

In sum, certification to the Indiana Supreme Court would not aid our resolution of this case. The parties expressly bargained for a future easement to lay additional pipelines, and Indiana law recognizes only that exercised easements may become fixed. Because Trunkline has not exercised its future rights under the agreements at issue, we affirm the district court's decision.