In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-3734

RICHARD DOERMER, both individually and derivatively on be-half of the Doermer Family Foundation, Inc.,

*Plaintiff-Appellant*,

*v.*

KATHRYN CALLEN, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:15-cv-00154-JVB-JEM — **Joseph S. Van Bokkelen**, *Judge*.

ARGUED DECEMBER 9, 2016 — DECIDED FEBRUARY 1, 2017

Before WILLIAMS and HAMILTON, *Circuit Judges*, and
CHANG, *District Judge*.[*]

HAMILTON, *Circuit Judge*. This case poses several questions
under the Indiana Nonprofit Corporation Act of 1991 about

---

[*] The Honorable Edmond E. Chang, United States District Judge for the
Northern District of Illinois, sitting by designation.

the governance of nonprofit corporations in Indiana. The case pits brother against sister in a long-running dispute over control of a small family foundation established by their parents. Plaintiff Richard Doermer is a member of the board of directors of the Doermer Family Foundation, Inc. ("the Corporation"). He asserts claims in his individual capacity and derivatively on behalf of the Corporation. The defendants include his fellow board members Kathryn Callen (his sister), John Callen (his nephew), and Phyllis Alberts. Richard also named as a defendant the University of Saint Francis of Fort Wayne, Indiana, Inc. Richard seeks injunctive relief against all other board members and a money judgment for the Corporation against Kathryn and Saint Francis.

The district court granted defendants' motions to dismiss, and we affirm. Under Indiana law, only a shareholder or member of a corporation may bring a derivative action on the corporation's behalf. Richard lacks standing to bring a derivative claim because he is neither a shareholder nor a member. In fact, the Corporation's articles of incorporation provide that it "shall have no members." Richard's individual claims for money judgment likewise fail. They are properly understood as belonging to the Corporation (and so derivative in nature). Finally, all of Richard's individual claims fail as a matter of law on their merits.

I.   *Factual and Procedural Background*

We recount the key factual allegations in the complaint, which we accept as true and construe in the light most favorable to plaintiff Richard Doermer. See *Huon v. Denton*, 841 F.3d 733, 738 (7th Cir. 2016). We have also considered the Corporation's articles of incorporation and bylaws and the resolution first appointing defendant Phyllis Alberts to the board. The

Corporation appended these documents to its motion to dismiss: the documents are "central to the complaint and are referred to in it," *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013), and Richard has not challenged their authenticity.

Richard's father formed the Corporation in 1990 along with Richard; Richard's mother; and Richard's sister, defendant Kathryn Callen. Pursuant to the Corporation's articles of incorporation and bylaws, each family member served as a lifetime director. Richard's mother died in 2000. A decade later, the remaining family members elected defendant Phyllis Alberts to a three-year term on the board. Richard's father died in October 2010, leaving three directors: Richard, Kathryn, and Phyllis. Phyllis's term expired on January 28, 2013.

Under Indiana law, a nonprofit corporation must be governed at all times by at least three directors. See Ind. Code § 23-17-12-3. In Richard's view, when Phyllis's term expired, the Corporation was no longer lawfully constituted and the two remaining board members (he and his sister Kathryn) could not act on the Corporation's behalf or exercise its corporate powers. However, Indiana law provides a safety valve when a nonprofit director's term expires without further action by the board. Despite the expiration, "the director continues to serve until … a successor is elected, designated, or appointed and qualifies." § 23-17-12-5(d). That language is reflected in the Corporation's bylaws and in the 2010 resolution first appointing Phyllis to the board. The bylaws stipulate that any director other than one of the surviving founders "shall serve for three (3) years … *and until* her or his successor is elected and qualified" (emphasis added). The resolution confirmed that Phyllis would serve "for a term of three (3) years,

*or until* such time as her successor shall be elected and quali-
fied" (emphasis added).

Acting pursuant to the resolution and bylaws, Kathryn
and Phyllis voted in September 2013 to elect Phyllis to a sec-
ond term. Richard opposed Phyllis's reelection. The board
then took a series of actions over Richard's objections, includ-
ing authorizing gifts to Saint Francis (on whose board
Kathryn also serves) and electing Kathryn's son, defendant
John Callen, as a fourth board member.

Following John's election, Richard brought this suit. He
seeks to assert claims on his own behalf and derivatively on
behalf of the Corporation. Richard requested a judgment
against Kathryn for the amount of charitable contributions
made by the Corporation following the expiration of Phyllis's
original term (Count I); he sought to recover the gifts received
by Saint Francis (Count III); and he sought Kathryn's removal
from the board (Count II), an injunction barring Phyllis and
John from acting as directors (Count IV), and appointment of
new directors (Count V). The Corporation and Saint Francis
each moved to dismiss, citing Federal Rules of Civil Proce-
dure 12(b)(6) and 23.1. The individual defendants answered
the complaint and then moved for judgment on the pleadings
and to join the Corporation's motion.[1]

---

[1] The Corporation also argued lack of subject matter jurisdiction, citing
Rule 12(b)(1). The district court also cited Rule 12(b)(1). As explained be-
low, we agree with the district court that Richard lacked standing to sue
derivatively. However, the problem is one of prudential rather than con-
stitutional standing, so it did not actually affect subject matter jurisdiction.
See *Korte v. Sebelius*, 735 F.3d 654, 668 (7th Cir. 2013) ("The [shareholder-
standing] rule is an aspect of third-party standing doctrine, which imple-
ments the general principle that litigants may not sue in federal court to

The district court granted the defendants' motions and dismissed the action. *Doermer v. Callen*, No. 2:15-CV-154 JVB, 2015 WL 6870580 (N.D. Ind. Nov. 9, 2015). The court found that Richard lacked standing to bring a derivative claim, *id.* at *2, and that his individual claims failed because he lacked standing to bring them and, even if he did have standing, because the claims were meritless, *id.* at *4–5. Richard has appealed.

II. *Analysis*

We review *de novo* the district court's dismissal of Richard's claims for lack of standing to proceed in a derivative capacity, see *Westmoreland County Employee Retirement System v. Parkinson*, 727 F.3d 719, 724 (7th Cir. 2013), and for failure to state a claim, see *Rocha v. Rudd*, 826 F.3d 905, 909 (7th Cir. 2016). Our duty in this diversity suit is to decide issues of Indiana state law as we predict the Indiana Supreme Court would decide them today. E.g., *Frye v. Auto-Owners Ins. Co.*, No. 16-1677, —

---

enforce the rights of others. … Like other rules of third-party standing, however, the shareholder-standing rule is a prudential limitation and does not affect the court's authority to hear the case."); see also *In re Facebook, Inc., Initial Public Offering Derivative Litig.*, 797 F.3d 148, 156 (2d Cir. 2015) ("Failure to satisfy the contemporaneous ownership requirement of Rule 23.1 does not, of course, raise a jurisdictional issue under Article III. Rather, it means that the putative derivative plaintiff does not have standing to represent the interests of the nominal defendant in a derivative capacity."); *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1237 (9th Cir. 2008) ("Federal Rule of Civil Procedure 23.1's pleading requirement does not directly implicate subject matter jurisdiction[.]"). The district court's citation to Rule 12(b)(1) does not affect this appeal. The court properly confined its review to Richard's allegations and the legal documents that were integral to his complaint. The court's substantive analysis was correct, as was the scope of its review.

F.3d —, —, 2017 WL 25481, at *3 (7th Cir. Jan. 3, 2017). The case presents questions about the meaning of Indiana's Nonprofit Corporation Act, so we apply the "basic tools of statutory interpretation" that the Indiana Supreme Court has long recognized: statutes are "read as a whole, and words are given their plain and ordinary meaning." *Id.*; see also *ESPN, Inc. v. University of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016) ("Our first task when interpreting a statute is to give its words their plain meaning and consider the structure of the statute as a whole."); Ind. Code § 1-1-4-1 (codifying the canon that words "shall be taken in their plain, or ordinary and usual, sense"). Conversely, "when a statute is susceptible to more than one interpretation, it is deemed ambiguous and is thus open to judicial construction." *In re Howell*, 27 N.E.3d 723, 726 (Ind. 2015).

In construing a statute, "our primary goal is to effectuate legislative intent." *Walczak v. Labor Works-Fort Wayne LLC*, 983 N.E.2d 1146, 1154 (Ind. 2013). We aim for an interpretation that harmonizes all provisions so as to give a consistent meaning to the whole without treating any language as surplusage. See *Klotz v. Hoyt*, 900 N.E.2d 1, 5 (Ind. 2009); *Corr v. American Family Ins.*, 767 N.E.2d 535, 540 (Ind. 2002). We avoid interpretations that depend on selective readings of individual words, and we "do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result." *ESPN, Inc.*, 62 N.E.3d at 1196, quoting *Anderson v. Gaudin*, 42 N.E.3d 82, 85 (Ind. 2015).

Before turning to the substantive issues on appeal, though, we address a procedural point. In the final paragraph of his brief in the district court, Richard asked for leave to amend his complaint. He offered, however, no explanation as to any

revisions that might correct the deficiencies the defendants had identified, nor did he ever submit a proposed amended complaint or file a motion for leave to amend. On appeal, he has not identified any proposed amendments to his complaint, choosing instead to defend the complaint as pled. We ordinarily hesitate before affirming a final judgment of dismissal when the plaintiff seeks leave to amend, at least where there has been no prior effort to amend. See, e.g., *Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) (reversing dismissal). In this case, however, it is clear that amendment would be futile. Richard has identified no proposed amendments that might save his case, and the law is clearly on the defendants' side. See *id.* at 520 (where amendment would be futile, district court may deny leave to amend and enter immediate final judgment); see also *Foman v. Davis*, 371 U.S. 178, 182 (1962) (futility of amendment is one reason to deny leave to amend). We turn now to Richard's derivative claims and then his individual capacity claims.

A. *Derivative Claims*

1. *The Indiana Nonprofit Corporation Act*

Richard seeks to bring claims derivatively on behalf of the Corporation. The problem is that he is not a "member" of the Corporation. In fact, the Corporation has no members, a feature expressly permitted by the Nonprofit Corporation Act. See Ind. Code § 23-17-7-3. Neither that Act nor any other Indiana statute or case authorizes a non-member director of a nonprofit corporation to bring a derivative suit on the corporation's behalf. For that matter, the Act includes no provision authorizing any derivative proceedings at all. (In this respect, the Act differs from the Indiana Business Corporation Law,

which provides that a shareholder—but not a director with-out an ownership interest—may bring a derivative action. See § 23-1-32-1.)

The treatment of derivative litigation in the Indiana Busi-ness Corporation Law is consistent with the approach that most other jurisdictions take: "With the exception of the rare corporate statute that provides otherwise, directors and offic-ers who cannot satisfy the share-ownership requirement do not have standing to bring a derivative suit solely because of their capacity as directors or officers." 3 James D. Cox & Thomas Lee Hazen, *Treatise on the Law of Corporations* § 15:9 (3d ed. 2010) (updated 2016); cf. *Schoon v. Smith*, 953 A.2d 196, 209–10 (Del. 2008) (discussing 1994 proposal by American Law Institute to allow for narrow director derivative stand-ing, but observing there is "little, if any, case law adopting, or legal commentary approving, this particular … proposal," and declining to recognize such an action in Delaware).

Richard argues, however, that if the Indiana courts squarely confronted the issue, which he agrees is one of first impression, they would likely permit a non-member director in his position to sue derivatively. In support, he cites *Kirtley v. McClelland*, 562 N.E.2d 27 (Ind. App. 1990), a case that rec-ognized an equitable derivative remedy where none was ex-pressly provided under the predecessor to the Nonprofit Cor-poration Act. The *Kirtley* court observed that the "absence of a statutory procedure for initiating a derivative action by a not-for-profit corporation when one has been affirmatively provided for for-profit corporations does not require the con-clusion that statutory authorization is a necessity." *Id.* at 30. In *Kirtley*, however, the plaintiffs were themselves members of the organization (a condominium owners' association). *Id.* at

28–29. *Kirtley* did not hold or even hint that a non-member would have standing to bring such an equitable action.

Richard also relies on *Dotlich v. Dotlich*, 475 N.E.2d 331 (Ind. App. 1985), *abrogated in part on other grounds by State Board of Tax Comm'rs v. Town of St. John*, 751 N.E.2d 657 (Ind. 2001). The plaintiff in *Dotlich* was both a shareholder and a director of a for-profit corporation. *Id.* at 335. The court saw no reason why the plaintiff should be "barred from suing on behalf of the corporation just because he [was] a director." *Id.* at 340. Again, the court did not hold or hint that a director who was not a shareholder could nevertheless sue to vindicate the corporation's rights. On the contrary, in the more recent case of *Brenner v. Powers*, 584 N.E.2d 569, 576 (Ind. App. 1992), the Indiana Court of Appeals (again construing a predecessor to the Nonprofit Corporation Act of 1991) held that before plaintiffs' standing to prosecute a derivative action could be established, the trial court would first have to resolve a dispute concerning plaintiffs' corporate membership status.

In short, the Nonprofit Corporation Act does not authorize, nor have Indiana courts suggested they would approve, a non-member director's derivative action. The state court of appeals has strongly implied that such an action would be barred. See *Kirtley*, 562 N.E.2d at 30 ("In Indiana, standing is achieved by showing a personal interest in the corporation. 'Shareholders and stockholders in a corporation, or an interested member, may bring suit on behalf of the corporation to protect the interest of the corporation … but, in doing so, their interest must be shown … .'") (citations omitted).

Even if Richard could find some support in substantive state law for allowing him to bring derivative claims as a non-member director, we doubt that he could bring a director's

derivative suit in federal court. Under Federal Rule of Civil Procedure 23.1(b)(1), a derivative complaint must "allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law." Federal jurisdiction here is based on diversity of citizenship under 28 U.S.C. § 1332. State substantive law applies, but federal procedural rules govern. *Goesel v. Boley Int'l (H.K.) Ltd.*, 806 F.3d 414, 419 (7th Cir. 2015), citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); see also *Parkinson*, 727 F.3d at 721–22 (adequacy of pleadings in derivative suit is "measured by federal law—in particular, Rule 23.1"); *Boland v. Engle*, 113 F.3d 706, 710 (7th Cir. 1997) (derivative suits in federal court are governed by "federal procedural requirements and state substantive law").

Nor would Indiana procedural rules offer Richard any refuge even if they applied. Indiana Rule of Trial Procedure 23.1 echoes the requirements of the federal rule, providing that a derivative complaint "shall allege that the plaintiff was a shareholder or member or holder of an interest, legal or equitable, in such shares or membership at the time of the transaction … or that his share or membership thereafter devolved on him by operation of law." Neither the federal nor the state rule contemplates an action by a non-member director with no legal or beneficial interest in the corporation.

### 2. *Policy Concerns*

Lacking a legal basis for his theory of derivative standing, Richard invokes public policy concerns. He argues that a rule barring directors from pursuing derivative claims on behalf of memberless nonprofit corporations would "allow for a wrong without a remedy." He adds that the "logical extension

of defendants' argument would leave the [Corporation] with no recourse for a director's fraud or even embezzlement."

The argument overlooks a number of other remedies that are less susceptible to private misuse. The Nonprofit Corporation Act authorizes a variety of mechanisms (including two that Richard himself invokes in support of his individual claims) to address such issues as deadlock or director misconduct. For example, the Act authorizes suit by a director or by the attorney general to enjoin corporate acts where third parties have not acquired relevant rights. Ind. Code § 23-17-4-4(b). The Act also authorizes suit by the corporation itself or by ten percent of members of a voting class to remove a director who engages in specified misconduct, such as fraud or gross abuse of discretion. § 23-17-12-13. The Act provides for administrative dissolution if the secretary of state receives credible evidence that the corporation is engaging in illegal or *ultra vires* acts. § 23-17-23-1(5). It also provides for judicial dissolution in an action brought by the attorney general if the corporation abuses its authority, § 23-17-24-1(a)(1)(B), or in an action brought by a director or a small consortium of members if the directors are deadlocked or engaged in illegal, oppressive, or fraudulent conduct, § 23-17-24-1(a)(2)(A)–(B). And the Act empowers the attorney general to request a variety of remedies in addition to dissolution, including injunctive relief and the appointment or removal of trustees, officers, or directors. § 23-17-24-1.5(b). These provisions are only illustrative; the Act authorizes additional remedies. The point is simply that the absence of a non-member director's derivative action would not leave memberless nonprofit corporations (like the Corporation here) without legal protection from wrongdoing by directors or others.

Even if the exclusion of a derivative remedy for member-less nonprofit corporations could result in some unchecked corporate mischief, it is no answer that the law guarantees a remedy for every wrong. The law has many doctrines and exceptions that limit the power of courts to redress even substantial harms. For example, immunity doctrines shield certain classes of government defendants from liability for misconduct. Judges, prosecutors, and officials who fill quasi-judicial and quasi-prosecutorial roles are entitled to absolute immunity from damages stemming from many of their official acts, no matter how erroneous or harmful. *Brunson v. Murray*, 843 F.3d 698, 710 (7th Cir. 2016). Other government officials who do not enjoy absolute immunity are nonetheless shielded by qualified immunity, a robust doctrine that "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). More broadly, doctrines of sovereign immunity bar or limit relief for many torts or breaches of contract by governments. Compare, e.g., *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."), with *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 39 (1994) ("The Eleventh Amendment largely shields States from suit in federal court without their consent … ."), and *Alden v. Maine*, 527 U.S. 706, 713 (1999) ("[T]he States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today … ."). Some statutes provide heightened standards of liability

for certain classes of defendants (such as Good Samaritan volunteers) who act in ways that society values, even if harm results in a particular case. E.g., Ind. Code § 34-30-12-1 (person who gratuitously renders emergency care at scene of accident is generally immune from liability for injuries unless person's acts or omissions involved gross negligence or willful or wanton misconduct); § 34-30-12-2 (same for person who has completed a CPR training course and who attempts to gratuitously administer CPR to a victim of a medical emergency).

Just as the law protects certain classes of defendants, it limits the recovery that might otherwise inure to certain classes of plaintiffs. Prisoners, for instance, are barred under the Prison Litigation Reform Act of 1995 from bringing a federal civil action to recover for strictly mental or emotional injuries suffered while in custody. 42 U.S.C. § 1997e(e). Tort plaintiffs in jurisdictions that maintain traditional contributory negligence rules often encounter insurmountable barriers to recovery for tortious injuries. See, e.g., *Coleman v. Soccer Ass'n of Columbia*, 69 A.3d 1149, 1150, 1152 (Md. 2013). Federal taxpayers who wish to bring a tax refund suit must typically first pay their assessed liability in full, a heavy burden for those taxpayers with limited means or large assessments. See *Gessert v. United States*, 703 F.3d 1028, 1037 (7th Cir. 2013), citing *Flora v. United States*, 357 U.S. 63 (1958). Litigants with otherwise viable claims often run up against statutes of limitation or repose, administrative exhaustion requirements, and other defenses. Through these restrictions and limitations, legislatures and courts attempt to balance the benefits of a robust private litigation regime against the costs that such a regime can impose.

Derivative litigation, which is a "perennial target of the commentators' blandishments and ire," 3 Cox & Hazen, *supra*,

§ 15:1, can impose significant costs.[2] In enacting the Nonprofit Corporation Act, the Indiana legislature could reasonably have determined that the non-derivative remedies we cite above are adequate to protect against nonprofit corporate governance run amok. Indeed, the drafters likely included Indiana Code § 23-17-7-3 (providing that nonprofits may organize without members) to allow incorporators to opt out of derivative litigation. The Act was enacted barely six months after the Indiana Court of Appeals decided *Kirtley*, and early commentators read the new law as providing an escape hatch to avoid the consequences of *Kirtley* (or possibly even as superseding it). See Kevin M. Boyle, *Nonprofit Corporation Act of 1991: Introduction to Significant Changes*, 35 Res Gestae 462, 463 (1992) ("If members or directors of a Nonprofit organized under [a prior act] are concerned about potential derivative actions, the Nonprofit should opt into the 1991 Act. The elimination of members prevents the opportunity for member de-

_____

[2] See, e.g., Harry G. Hutchison, *Presumptive Business Judgment, Substantive Good Faith, Litigation Control: Vindicating the Socioeconomic Meaning of* Harhen v. Brown, 26 J. Corp. L. 285, 290 (2001) ("[Derivative] suits raise the possibility that even where the interests of management and shareholders are already properly aligned, litigation that results in abusive settlements may nonetheless occur. This may provide an incentive for future, improper litigation or abusive settlements while also raising the possibility of income redistribution from shareholders to attorneys."); Carol B. Swanson, *Juggling Shareholder Rights and Strike Suits in Derivative Litigation: The ALI Drops the Ball*, 77 Minn. L. Rev. 1339, 1348 (1993) ("In contrast to … potentially substantial benefits, courts and commentators have … long stigmatized derivative litigation as the 'refuge of strike suit artists specializing in corporate extortion.' … In addition to inviting strike suits, intracorporate litigation necessarily entails significant social costs.") (footnote omitted).

rivative actions."); Paul J. Galanti, *Indiana Nonprofit Corpora-*
*tion Act*, 25 Ind. L. Rev. 999, 1013 (1992) ("The court in *Kirtley*
… recognized the right of a member of an Indiana not-for-
profit corporation organized under the [predecessor statute]
to bring a derivative action to remedy the defendant's breach
of duty. However, it is possible that the [Nonprofit Corpora-
tion Act's] drafters intended to eliminate this right."). It is gen-
erally prudent for courts to assume that legislatures intend
the obvious and natural consequences of the statutory lan-
guage they enact. The obvious and natural consequence of al-
lowing nonprofit corporations without members is that the
option forecloses derivative litigation.

As several commentators have noted, the drafters of the
Nonprofit Corporation Act used the American Bar Associa-
tion's Revised Model Nonprofit Corporation Act of 1987 as a
template for the Indiana statute. See, e.g., 1 Marilyn E. Phelan,
*Nonprofit Organizations: Law and Taxation* § 1:27 (2010) (up-
dated 2016); Boyle, *supra*, at 462; Evelyn Brody, *Institutional*
*Dissonance in the Nonprofit Sector*, 41 Vill. L. Rev. 433, 477 n.223
(1996); Galanti, *supra*, at 999–1003. The Indiana drafters incor-
porated the vast majority of provisions from the model act,
often with only subtle changes in wording. But there is one
difference important for this case. The Indiana drafters did
not adopt section 6.30 of the model act, which authorizes de-
rivative suits (including those brought by a director). Given
the structure of the Nonprofit Corporation Act, the timing of
its enactment, and the relationship between the Act and the
ABA's model act, the statutory option for incorporators to or-
ganize without members appears to be not a "bug" in the Act
but a deliberate feature.

Richard has identified no authority for the proposition
that a non-member director's derivative action is available un-
der Indiana law, and all signs point to the contrary. Moreover,
federal procedural rules unambiguously require a derivative
plaintiff to plead and prove that he is a member or share-
holder of the subject corporation, and Richard is neither. We
affirm the district court's conclusion that Richard lacks stand-
ing to bring a derivative action. We need not reach the sepa-
rate question whether Richard was excused from making de-
mand on the board.

B.  *Individual Claims*

Richard pled each of the five counts in his complaint both
as derivative and as personal to him. Our conclusion that he
may not bring a derivative action does not necessarily fore-
close all of his individual or "direct" claims. His claims for
money judgment nonetheless fail because he is the wrong
party to bring them. He might have had standing in theory to
pursue a narrow claim for injunctive relief, but he has neither
pled factual allegations nor identified a viable legal theory
that could support such relief here.

1.  *Money Judgment*

We consider first Richard's claims for a money judgment.
In Count I, he requests a judgment against his sister Kathryn
and in favor of the Corporation in the amount of at least
$220,000. In Count III, he seeks to recover gifts received by
Saint Francis and thus requests judgment in favor of the Cor-
poration in the amount of at least $115,000. There is no indi-
cation in the complaint that Richard has personally suffered
any economic damage.

But there's the rub. Even if Richard's claims had merit (they do not, as discussed below), he could not step up as litigation champion on behalf of the Corporation to vindicate its interests. That is what derivative litigation is for—and Richard lacks standing to bring a derivative suit. He cannot avoid that bar simply by re-characterizing the Corporation's claims as his own. See *Knauf Fiber Glass, GmbH v. Stein*, 622 N.E.2d 163, 165 (Ind. 1993) ("[T]he general rule of corporations [is] that a shareholder may not maintain an action in his or her own name to redress an injury to the corporation."); cf. *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago*, 877 F.2d 1333, 1335 (7th Cir. 1989) ("Good reasons account for the enduring distinction between direct and derivative injury. When the injury is derivative, recovery by the indirectly-injured person is a form of double counting.").[3]

---

[3] Richard's attempt to recover the gifts to Saint Francis would fail as a matter of law even apart from his lack of standing. Richard relies on a theory of unjust enrichment. That does not work. To show unjust enrichment, a plaintiff must establish that he conferred a benefit on the defendant while expecting remuneration and that it would be unjust for the defendant to retain the benefit without making restitution. *Woodruff v. Indiana Family & Social Servs. Admin.*, 964 N.E.2d 784, 791 (Ind. 2012); see also *Coleman v. Coleman*, 949 N.E.2d 860, 867 (Ind. App. 2011) ("We [have] noted that 'relief will be denied if the plaintiff did not contemplate a fee in consideration of the benefit or if the defendant could not reasonably believe the plaintiff expected a fee.'") (citation omitted). Putting to one side the problem that Richard personally conferred no benefit on Saint Francis, there is no indication that the Corporation expected some kind of remuneration in exchange for its gifts, nor certainly that Saint Francis believed it would owe any remuneration. Richard's reliance on *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995), is not helpful. That case involved a different jurisdiction (Illinois), a different type of claim (fraudulent conveyance as prohibited by statute), and a different policy concern (protection of creditors).

2. *Injunctive Relief*

Richard has identified two sections of the Nonprofit Corporation Act that he reads as according him a right to sue for injunctive relief in his capacity as director. We examine them in turn.

First, Indiana Code § 23-17-12-13(a) provides that a court may remove a director who commits specified misconduct in a proceeding "commenced by the corporation or at least ten percent (10%) of the members of a class entitled to vote for directors." This removal statute, if applicable, would pertain only to Count II, which asks the court to remove Kathryn from the board. The statute does not apply because Richard is not a member of the Corporation.

As a director, Richard is entitled under Article IV of the Corporation's bylaws to vote for directors. But the Nonprofit Corporation Act states that a person will not be deemed a member based on "Any rights the person has as a director." § 23-17-2-17(b)(3). The phrasing of the removal statute—"ten percent (10%) of the *members* of a class entitled to vote for directors" (emphasis added)—connotes corporate membership rather than inclusion in any group that happens to enjoy voting rights. That reading is bolstered by § 23-17-7-4, which allows incorporators to "establish classes of membership with different rights or obligations." A nonprofit corporation could be structured to have several classes of membership, only one of which might be authorized to elect directors. The members of that discrete voting class would then have standing to sue under the removal statute, provided all other requirements are satisfied. Since the Corporation has no members, the removal statute is irrelevant here.

Second, Indiana Code § 23-17-4-4(b) provides that a "corporation's power to act may be challenged in a proceeding against the corporation for a declaratory judgment or to enjoin an act where a third party has not acquired rights." The statute adds that proceedings "may be brought by the attorney general *or a director*" (emphasis added). The remedy under this section is narrow: it would not support the money judgment Richard demands in Counts I and III, nor would it provide a vehicle for the removal and appointment actions he requests in Counts II and V. In theory it might support prospective injunctive relief along the lines Richard describes in Count IV, but the question remains whether Richard has pled a plausible basis to justify such relief.

He has not. His complaint turns on two faulty theories of corporate wrongdoing. Principally, he argues that Phyllis Alberts was no longer empowered to act as a director after her original term expired on January 28, 2013, so that her September 2013 reelection was invalid. (Recall that she and Kathryn voted in favor of her re-election, while Richard opposed.) Building on that premise, Richard argues that all later corporate acts—including the gifts to Saint Francis and other charities and the election of Kathryn's son John—were invalid because (1) he and Kathryn were the only authorized board members, (2) he opposed each of these acts, and (3) regardless, Indiana law requires that nonprofits be governed at all times by at least three directors. As Richard would have it, if a family foundation with three directors inadvertently misses a reelection deadline, the foundation is incapacitated as a matter of law.

Richard misreads a critical provision of the Corporation's bylaws. Under Article IV, any director other than one of the

Doermer family founders "shall serve for three (3) years …  *and until* her or his successor is elected and qualified" (emphasis added). Article IV continues: "At the regular meeting of the Board of Directors immediately preceding the expiration of the term of any director, or at a special meeting, the Board shall elect a successor director to replace the director whose term will expire, *or has expired* … ." (Emphasis added.) The bylaws contemplate the scenario that played out here—a director's term expired before the board convened to hold another election.

The resolution originally appointing Phyllis to the board is clearer still: it states that Phyllis would "serve … for a term of three (3) years, *or until* such time as her successor shall be elected and qualified." (Emphasis added.) This unambiguous language mirrors Indiana Code § 23-17-12-5(d): "Despite the expiration of a director's term, the director continues to serve until … a successor is elected, designated, or appointed and qualifies."

To arrive at Richard's preferred construction of the governing instruments, we would have to ignore a statute that is directly on point, treat portions of Article IV of the bylaws as surplusage, and interpret the resolution appointing Phyllis to the board as if it read "serve … for a term of three (3) years, or until such time as her successor shall be elected and qualified, *whichever comes first*," which it does not. Instead, we adopt an interpretation that harmonizes the language of the bylaws and the resolution in a practical manner wholly consistent with the statute. Cf. *Ryan v. Lawyers Title Ins. Corp.*, 959 N.E.2d 870, 875 (Ind. App. 2011) (courts will read a contract as a whole, attempting to harmonize its provisions without ren-

dering any meaningless). Phyllis retained her powers as a director even after her term formally expired. Her reelection by a vote of 2–1 was lawful. The later corporate transactions and activities approved by that same 2–1 vote were likewise lawful. All other issues in this case aside, the fact that Phyllis's power as a director did not expire as a matter of law on January 28, 2013 takes most of the remaining air out of Richard's complaint.

But not quite all of it. Richard offers a final theory of corporate wrongdoing. He alleges that Kathryn's vote in favor of gifts to Saint Francis was "conflicted" because she also serves as a member of that organization's board of trustees. In this court he characterizes this supposedly "conflicted" vote as a kind of "self-dealing."

Richard has not identified any authority for the proposition that, merely by voting in favor of a charitable contribution from one nonprofit organization to another, Kathryn somehow breached a fiduciary duty or committed some other wrong. Richard cannot cite a case, a statute, a regulation, or even a provision of the corporate instruments that would render Kathryn's vote unlawful. Indiana Code § 23-17-13-2.5(b) does not expressly immunize a "conflicted" director, but it provides that a transaction between two nonprofit corporations is not void or voidable solely because a director who votes to authorize the transaction serves on the boards of both corporations.[4] With no explanation from Richard as to why

---

[4] To qualify for protection under the statute, a transaction must be (1) authorized by a majority of disinterested directors, (2) approved by those members who are entitled to vote on the transaction, or (3) "fair as to the corporation at the time the … transaction is authorized." Ind. Code § 23-

Kathryn's approval of the gifts to Saint Francis was impermissible, and with clear statutory guidance showing that the transaction itself could survive irrespective of any "conflict," Richard's final theory of corporate wrongdoing is without merit.

Richard failed to allege a plausible claim for relief, and he has proposed no amendment that could possibly save his complaint. The district court's dismissal of Richard's case was appropriate. The judgment of the district court is

AFFIRMED.

17-13-2.5(c). Richard has alleged no facts showing that the gifts to Saint Francis were somehow unfair to the Corporation.