In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-3270

NICKOLAS SEEKINS,

*Plaintiff-Appellant*,

*v.*

CHEP USA and CHEP RECYCLED
PALLET SOLUTIONS, LLC,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 19-cv-2224 — **Jane Magnus-Stinson**, *Judge*.

ARGUED SEPTEMBER 23, 2021 — DECIDED DECEMBER 10, 2021

Before KANNE, ROVNER, and WOOD, *Circuit Judges*.

KANNE, *Circuit Judge*. Nickolas Seekins lost his left foot as
a result of an accident that occurred while he was operating a
machine used to lift and transport pallets. Seekins sued CHEP
USA and CHEP Recycled Pallet Solutions, LLC (collectively,
"CHEP") in Indiana state court, alleging CHEP was liable for
his injuries under a theory of negligence.

After CHEP removed the case to federal court, CHEP and Seekins both moved for summary judgment. Addressing only the duty element of negligence, the district court granted summary judgment to CHEP, holding that CHEP did not owe Seekins a duty of care under Indiana negligence law. We agree with the district court and therefore affirm.

## I. BACKGROUND

The company doing business as Dollar General owns and operates a distribution center in Marion, Indiana. Dollar General hired both LMS Intellibound, LLC, d/b/a Capstone Logistics ("Capstone") and CHEP to perform certain tasks within the distribution center. Dollar General separately contracted with Capstone and CHEP. Capstone and CHEP did not have a direct relationship with each other.

Dollar General owned certain power equipment at the distribution center, including all pallet jacks. A pallet jack is a machine used to lift and transport pallets. There are different types of pallet jacks. Depending on the type, a pallet jack is controlled by an operator in one of two ways: the operator walks behind or alongside the pallet jack, or the operator rides the pallet jack by standing on the riding platform. The pallet jack involved in this case is a rider pallet jack, which the parties refer to as a "stow jack."

Dollar General labeled its equipment with identifiers to differentiate the machines. Capstone and CHEP employees were permitted to use Dollar General's stow jacks on a first-come, first-served basis.

Dollar General personnel were responsible for maintaining the stow jacks. Capstone and CHEP employees who had an issue with a stow jack were to bring the stow jack to the

Dollar General maintenance shop within the distribution center and fill out a "red tag" that identified the problem with the equipment. Once a piece of equipment was tagged for maintenance, only Dollar General mechanics or supervisors could remove the tag.

Capstone and CHEP employees sometimes left untagged stow jacks in the maintenance shop. When this occurred, Dollar General maintenance personnel would attempt to identify who last operated the stow jack to determine the issue. If the last operator of the stow jack could not be discovered, Dollar General maintenance personnel would attempt to diagnose the issue by taking the stow jack on a test drive. If a Dollar General mechanic could not identify any issues with the equipment during the test drive, the stow jack was placed back out on the floor. A red tag may or may not be generated by maintenance personnel.

Capstone employed Seekins to unload trucks at Dollar General's Marion distribution center. Capstone trained Seekins on the safe operation of Dollar General's stow jacks and required him to perform a twelve-point inspection prior to using the machines.

On May 16, 2017, Seekins began his shift at the Marion distribution center. That morning, Seekins was assigned to unload a truck in bay 4. He claimed stow jack number 4 ("SJ4") to complete his assignment. Prior to using SJ4, Seekins conducted a twelve-point inspection. He did not document any issues with SJ4 at that time. Seekins drove SJ4 to bay 4. As he operated SJ4 in bay 4, the stow jack "jumped," but Seekins did not report this issue to Dollar General maintenance.

Eventually, Seekins arrived at bay 2. A forklift was parked at the end of the aisle of bay 2, about forty-five feet away from Seekins as he made a left turn into the aisle. As Seekins approached the forklift, he attempted to reverse throttle, or "plug," to slow SJ4 down, but SJ4 failed to slow down.

Seekins engaged the emergency brake to stop SJ4 and avoid hitting the parked forklift. Seekins then jumped off SJ4, and his left foot became crushed between SJ4 and the parked forklift. Seekins's injured foot was ultimately amputated as a result of the accident.

Seekins filed suit in the Marion County Superior Court, alleging that CHEP, the other contractor, was liable for his injuries under a theory of negligence. CHEP successfully removed the case to the Southern District of Indiana and eventually moved for summary judgment. Seekins moved for partial summary judgment, solely on the duty element of negligence.

The district court granted summary judgment to CHEP, holding that CHEP did not owe Seekins a duty of care under Indiana negligence law. Seekins now appeals.

## II. ANALYSIS

We review *de novo* the district court's order granting summary judgment. *Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*, 955 F.3d 632, 643 (7th Cir. 2020) (citing *Ga.-Pac. Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011)). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "Where, as here, both parties filed cross-motions for summary judgment, all reasonable inferences are

drawn in favor of the party against whom the motion was granted." *Gill v. Scholz*, 962 F.3d 360, 363 (7th Cir. 2020) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)).

"Our duty in this diversity suit is to decide issues of Indiana state law as we predict the Indiana Supreme Court would decide them today." *Doermer v. Callen*, 847 F.3d 522, 527 (7th Cir. 2017) (citing *Frye v. Auto–Owners Ins. Co.*, 845 F.3d 782, 785–86 (7th Cir. 2017)). Under Indiana law, "to recover on a negligence theory, a plaintiff must establish: '(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach.'" *Miller v. Rosehill Hotels, LLC*, 45 N.E.3d 15, 19 (Ind. Ct. App. 2015) (quoting *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004)).

Before the district court, Seekins moved for summary judgment on the duty element alone, asserting that CHEP owed him a duty of care under *Dutchmen Manufacturing, Inc. v. Reynolds*, 849 N.E.2d 516 (Ind. 2006), and § 388 of the Restatement (Second) of Torts. In *McGlothlin v. M & U Trucking, Inc.*, Indiana first adopted §§ 388 and 392 of the Restatement (Second) of Torts to be used when determining whether a supplier of a dangerous chattel has a "duty to inspect, discover, and warn" the user. 688 N.E.2d 1243, 1245 (Ind. 1997); *see also Foxworthy v. Heartland Co-Op, Inc.*, 750 N.E.2d 438, 442 (Ind. Ct. App. 2001) ("The [Indiana Supreme Court] further noted that the factors incorporated in each of these sections are consistent with our recent jurisprudence regarding the determination of whether a duty exists, *i.e.*, the relationship of the parties, the reasonable foreseeability of harm to the person injured, and public policy concerns." (citing *McGlothlin*, 688 N.E.2d at 1245)).

On appeal, Seekins challenges the district court's ruling by reiterating his argument that CHEP owed him a duty of care under *Dutchmen* and § 388. Furthermore, Seekins requests we certify a question to the Indiana Supreme Court to the extent that we believe the issue of whether CHEP owed Seekins a duty under Indiana negligence law should best be addressed by the Indiana Supreme Court.

*A. Duty of Care Under § 388*

Seekins argues that the district court erred in granting summary judgment to CHEP because Indiana common law provides ample authority for finding that CHEP owed Seekins a duty under the facts of this case. Specifically, Seekins relies on *Dutchmen*, which analyzed a claim under § 388 of the Restatement (Second) of Torts.

Section 388 addresses liability for injuries caused by dangerous chattels and provides that:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Restatement (Second) of Torts § 388 (Am. L. Inst. 1965).

In *Dutchmen*, Don Reynolds sued Dutchmen, the prior lessee of a facility, for negligence after his son was injured when scaffolding broke loose and struck him while he was working at the facility. 849 N.E.2d at 518. The scaffolding had been constructed and installed by Dutchmen. *Id.* at 519. Dutchmen moved for summary judgment. *Id.* Relevant here, Reynolds argued that Dutchmen was liable as a supplier of a defective chattel under § 388. *Id.*

Seekins contends that "CHEP owed a duty to provide to any expected user of the chattel any information as to the 'character and condition of the chattel … which [the supplier] should recognize as necessary to enable [the user] to realize the danger of using it.'" Appellant's Br. at 20 (alterations in original) (quoting Restatement (Second) Torts § 388 cmt. b (Am. L. Inst. 1965)). Seekins focuses on a sentence from *Dutchmen* to support his contention: "Section 388 sets out a tort doctrine that places a loss on the party who caused it." *Dutchmen*, 849 N.E.2d at 521-22. *Dutchmen*, however, has limited applicability here. This is because it was undisputed in *Dutchmen* that the prior lessee was a "supplier." *Id.* at 521 ("Dutchmen was a 'supplier' as that term is used in section 388, and Dutchmen does not contend otherwise.").

For Seekins to succeed on his negligence claim under § 388—the theory of negligence he advances—he must show that CHEP was a "supplier" as that term is used in § 388. *See* Restatement (Second) of Torts § 388 cmt. d (Am. L. Inst. 1965) ("One supplying a chattel to be used or dealt with by

others is subject to liability under the rule stated in this Section, not only to those for whose use the chattel is supplied but also to third persons whom the supplier should expect to be endangered by its use.").

A comment to § 388 defines "supplier" as:

> any person who for any purpose or in any manner gives possession of a chattel for another's use, or who permits another to use or occupy it while it is in his own possession or control, without disclosing his knowledge that the chattel is dangerous for the use for which it is supplied or for which it is permitted to be used.

*Id.* § 388 cmt. c. The comment goes on to specify that "[t]hese rules … apply to sellers, lessors, donors, or lenders … [and] to all kinds of bailors … [and] to one who undertakes the repair of a chattel … ." *Id.*

However, Seekins cannot show that CHEP was a "supplier" as that term is used in § 388. That is, there is no evidence that CHEP sold, leased, donated, or lent SJ4 to Seekins or his employer. Furthermore, there is no evidence that a bailment relationship existed between CHEP and Seekins (or his employer), or that CHEP repaired SJ4. Instead, Dollar General owned, controlled, and maintained SJ4 for use by Seekins, other Capstone employees, and CHEP employees on a first-come, first-served basis at the Marion distribution center. *See Seekins v. Dolgencorp, LLC*, No. 1:17-cv-4415-JMS-TAB, 2019 WL 1472379, at *9 (S.D. Ind. Apr. 3, 2019) ("It is undisputed that Dollar General supplied Mr. Seekins with the SJ4, and, thus, it is clear that Dollar General was a supplier of chattel for the purpose of Sections 388 and 392 of the Restatement (Second) of Torts.").

The district court classified the relationship between Seekins and CHEP as one of occasional co-borrowers. While we need not adopt the district court's classification, it is telling that Seekins failed to identify before the district court any case—in any jurisdiction—that recognizes a duty between two co-borrowers of chattel when another entity owns, lends, and maintains the chattel. On appeal, too, Seekins failed to identify any such case in his briefs or during oral argument.

Seekins takes issue with the district court's classification, arguing that the district court took an "unnecessarily narrow view" of § 388 "by holding there is no duty owed between companies that share the same power equipment." Appellant's Br. at 20. There exists evidence in the record indicating that SJ4 had possibly been used by a CHEP employee prior to Seekins's operation of SJ4. *See* R. 116 at 6–8. Based on that evidence, Seekins contends, without support, that CHEP's alleged failure to remove SJ4 from service means that CHEP effectively supplied it to Seekins.

Seekins's arguments are unconvincing for two reasons. First, he mischaracterizes the district court's holding. *See* Appellant's Br. at 20. Applying Indiana law, the district court held that CHEP did not owe a duty of care to Seekins because CHEP was not a "supplier" as that term is used in § 388. Second, because this is a diversity case, our obligation is to determine whether CHEP owed Seekins a duty under Indiana law as we predict the Indiana Supreme Court would decide today. *See Doermer*, 847 F.3d at 527. It is clear under the facts of this case that CHEP owed no duty to Seekins because CHEP is not a "supplier" as that term is used in § 388.

Moreover, Seekins has not provided any authority to support his contention that two companies that share chattel

owned, controlled, and maintained by a third company owe each other a duty of care under § 388, or under any other theory of Indiana negligence law, and we will not create a duty under Indiana law where none exists. *Contra* Appellant's Br. at 25 ("If we are making law with this case, let us at least make good law.").

Seekins has therefore failed to show that CHEP owed him a duty of care under Indiana negligence law. Thus, the district court did not err in granting summary judgment to CHEP. *See Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011) ("Absent a duty, there can be no breach, and therefore, no recovery for the plaintiff in negligence.") (quoting *Vaughn v. Daniels Co. (W. Va.), Inc.*, 841 N.E.2d 1133, 1143 (Ind. 2006)).

*B. Certification*

Seekins requests that we certify to the Indiana Supreme Court the question whether, under Indiana law, employees of Company A owe a duty of reasonable care to employees of Company B when both companies share power equipment and the equipment experiences a break failure. Appellant's Br. at 4–5. We have said that certification is appropriate under Circuit Rule 52 "when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001) (quoting *In re Badger Lines, Inc.*, 140 F.3d 691, 698–99 (7th Cir. 1998)).

Under these circumstances, we do not believe certification is warranted. This is a case in which "there is no room for

'serious doubt' about how [the] state's highest court would resolve [the] question … ." *Pate*, 275 F.3d at 672 (citing *Patz v. St. Paul Fire & Marine Ins. Co.*, 15 F.3d 699, 705 (7th Cir. 1994)). Remember, Seekins moved for summary judgment in this case on the duty element of negligence. In doing so, he thought the evidence was sufficient to show that CHEP owed him a duty under § 388. He also argued before the district court and before us on appeal that *Dutchmen* was controlling to show that CHEP owed him that duty. But after our *de novo* review of the district court's order granting summary judgment to CHEP, we have concluded that Seekins has failed to show that CHEP owed him a duty of care under Indiana negligence law. We did so because "[w]e are not uncertain about the content of Indiana law on the issue[,]"and we thus deny Seekins's request for certification. *Pate*, 275 F.3d at 673.

### III. CONCLUSION

For the reasons above, the district court did not err in granting summary judgment to CHEP. We AFFIRM.