In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 21-1813

NORTH AMERICAN ELITE INSURANCE COMPANY,

*Plaintiff-Appellant,*

*v.*

MENARD, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19 C 6528—**Sara L. Ellis**, *Judge.*

_____

ARGUED MARCH 30, 2022—DECIDED AUGUST 4, 2022

_____

Before EASTERBROOK, WOOD, and HAMILTON, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Menard owns and operates a chain of home improvement stores across the Midwest. On August 10, 2016, an employee of the store in Morton Grove, Illinois, hit a customer with a forklift. The customer brought a negligence suit against Menard and its employee in state court.

At the time, Menard carried two levels of personal injury liability insurance. Menard is responsible for the first $2 million per occurrence, which the parties call a self-insured retention. After $2 million, the primary layer of insurance kicks in and Greenwich Insurance Company covers up to $1 million of liability. Liability exceeding $3 million (Menard's responsibility plus Greenwich's coverage) falls under an umbrella policy with North American Elite Insurance Company ("North American"), which covers additional liability up to $25 million per occurrence.

The negligence suit did not go well for Menard. On the first day of trial, the plaintiff offered to settle for $1,985,000—at the upper end of Menard's responsibility. Menard's lawyers did not respond to the settlement offer, even after North American found out about it and urged them to accept. Just before verdict, perhaps anticipating an adverse judgment, Menard entered into a "high-low" settlement agreement with the plaintiff, promising to pay at least $500,000 regardless of the verdict in exchange for capping its payout at $6 million. The jury returned a $13 million verdict, which was reduced to a $6 million settlement under the agreement. North American indemnified Menard for liability in excess of $3 million, while reserving its right to seek reimbursement.

North American then brought this action against Menard in federal court under the diversity jurisdiction. North American is incorporated in New Hampshire and has its principal place of business in Missouri, while Menard is incorporated in Wisconsin and has its principal place of business there. North American contends that Menard violated its duties under Illinois law by rejecting the settlement offer and proceeding to trial. The district court initially dismissed North

American's claims of breach of contract. 491 F. Supp. 3d 333 (N.D. Ill. Sep. 30, 2020). A few months later, the district court dismissed North American's remaining claims.

The parties argue over whether Menard's "self-insured retention" makes it an insurer. North American says yes and contends that Menard therefore is subject to additional responsibilities. See, e.g., *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513 (1996) (insurer can be sued in tort for failure to settle claim). North American's argument derives from dictum in *Lexington Insurance Co. v. RLI Insurance Co.*, 949 F.3d 1015, 1018 (7th Cir. 2020): "in effect, the Self-Insured Retention made [the insured] its own primary insurer up to $3 million per occurrence, with both [insurance policies] providing forms of excess insurance". *Lexington Insurance* used an analogy to explain the relation among those litigants. It did not say that a business assumes the legal responsibilities of an insurer by bearing some of its own liability. North American has not cited any Illinois case that supports such a proposition; if anything, Illinois courts agree that self-insured parties are not insurers. See *Antiporek v. Hillside*, 114 Ill. 2d 246 (1986) (excluding "self-insurance" from statutory definition of insurance "company"); *State Farm Mutual Insurance Co. v. Du Page County*, 2011 Ill. App. LEXIS 638 (2d Dist. June 16, 2011) (rejecting subrogation of claims because self-insured county was not "insurer" or "carrier").

Insurance, by definition, involves mitigating or shifting risk. Menard's first $2 million in liability was its own responsibility regardless of the circumstances—in other words, that amount was not insured. Menard had a $2 million deductible. See *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 413 (2006) ("the insurers' obligation to

provide indemnification was subject to a self-insured retention (SIR), that is, a deductible"). Menard therefore cannot be an insurer. If *Lexington Insurance* has anything to say about cases like this, it's that a self-insured retention can be difficult to distinguish from any other form of deductible. See 949 F.3d at 1022–23. But whatever we call Menard's payment obligation, it is not insurance, and North American's argument must fail in the absence of supporting Illinois caselaw.

North American's remaining theories depend on contractual language, and an examination of the relevant provisions pretty much decides this appeal. North American's policy contains a few relevant passages:

> [North American] will have no duty to defend any "suit" against [Menard]. [North American] will, however, have the right, but not the duty, to participate in the defense of any "suit" and the investigation of any claim to which this policy may apply.
>
> …
>
> [Menard a]grees in writing to: (a) Cooperate with [North American] in the investigation, settlement or defense of the "suit"; (b) Immediately send [North American] copies of any … legal papers received in connection with the "suit"; (c) Notify any other insurer whose coverage is available to [Menard]; and (d) Cooperate with [North American] with respect to coordinating other applicable insurance … .

Now compare the more expansive duties that Menard takes on in its agreement with Greenwich:

> [Menard] shall exercise utmost good faith, diligence and prudence to settle all claims and "suits" within the Self-Insured Retention … . In the event of a claim or "suit" which in our reasonable judgment may result in payments … in excess of the Self-Insured Retention, we [Greenwich] shall have the right and the duty to defend and may, at our sole discretion, assume control of the defense or settlement of such claim or "suit."

North American did not exercise its right to participate in the defense and does not argue that Menard failed to "cooperate" during litigation. Instead, it suggests that Menard violated its duties under the Greenwich agreement by rejecting the initial settlement offer.

The Greenwich policy requires Menard to act in good faith during litigation and try to reach settlements below $2 million. But Menard owed that duty to Greenwich, not North American. Contractual duties are not good as against the world. See *Brunswick Leasing Corp. v. Wisconsin Central*, 136 F.3d 521, 530 (7th Cir. 1998) (discussing Illinois law); *Robins Dry Dock Repair Co. v. Flint*, 275 U.S. 303, 307–08 (1927) (Holmes, J.) (contract "imposed no immediate obligation upon the petitioner to third persons"). If Greenwich believed that Menard had violated the "good-faith effort to settle" provision in its agreement, it could have refused to pay its $1 million tier of the damages. North American, however, can no more enforce Greenwich's contractual rights than it can those of Menard's suppliers. Contracts are usually enforceable only by the parties who agree to them, and North American has (rightly) not argued that it is a third-party beneficiary of the Greenwich–Menard policy. See, e.g., *Quinn v. McGraw-Hill Companies, Inc.*, 168 F.3d 331 (7th Cir. 1999).

North American insists that the duty of good faith and fair dealing implied in all Illinois contracts required Menard to give it the same consideration that Menard had promised to Greenwich. Yet equating the two duties would disregard the difference in the policies' language. In exchange for different premiums, Menard received different coverage and took on different duties. The parties could have agreed to a "follow form" provision that incorporates the same terms into both

primary and secondary layers of insurance. See, e.g., *Wisconsin Local Government Property Insurance Fund v. Lexington Insurance Co.*, 840 F.3d 411, 415 (7th Cir. 2016). Instead, part of Menard's negotiations with North American involved reserving more control over its litigation strategy. Respect for the parties' agreements requires us to take seriously the different bargains they consented to. Both of Menard's policies reference settlement and envisage future lawsuits, so North American also cannot argue that it is using good faith as a gap-filler. Cf. *Continental Bank, N.A. v. Everett*, 964 F.2d 701, 705 (7th Cir. 1992). The duty of good faith does not transmute North American's actual insurance policy into one it would have preferred in hindsight.

Moving beyond the policies, North American takes our decision in *Twin City Fire Insurance Co. v. Country Mutual Insurance Co.*, 23 F.3d 1175 (7th Cir. 1994), to suggest that Menard violated a common-law duty to settle and thus committed a tort. *Twin City Fire* itself concerned a primary and secondary insurer that were not in contractual privity. The opinion hypothesizes about our scenario—in which "the insured *wanted* a trial, even though there was a danger, which materialized, of a verdict in excess of the primary insurer's policy limit"—and concludes the remedy would be contractual, "depending on the terms of the policy." *Id.* at 1180. The policy here is clear. And even if it weren't, *Twin City Fire*'s speculation is irrelevant. The Illinois Supreme Court has since considered whether the contractual duty of good faith creates a general-purpose tort claim, and it said no. *Voyles v. Sandia Mortgage Corp.*, 196 Ill. 2d 288 (2001). As always, it is our duty in diversity cases to apply state law. See *Angel v. Bullington*, 330 U.S. 183, 191–92 (1947); *Seekins v. CHEP USA*, 20 F.4th 345, 348 (7th Cir. 2021). If North American wants to challenge

Illinois law in this respect it is free to do so, just not in federal court.

There is more we could say. North American did not exercise its right to participate in the defense, which exposed it to the risk that Menard would make litigating choices that it did not like. Menard's negotiation of a high-low settlement agreement with the plaintiff in the underlying trial shows that it took some steps to limit its insurers' eventual liability rather than gambling with their money. Nor do we doubt that Menard's own payment obligations were ample motivation to minimize any prospective damage award. But it suffices that North American is not entitled to the benefit of someone else's bargain.

AFFIRMED